UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| HITESH SHAH, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 3:23 C 50353 |
| v. | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| HY-VEE, INC., | ) | |
|     Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

From August 2020 until his termination in 2022, *pro se* Plaintiff Hitesh Shah was employed in the pharmacy department of Defendant Hy-Vee, Inc., a grocery store chain. Mr. Shah is a Hindu male of South Asian ethnicity, and alleges that he is disabled by knee pain, back pain, ADHD, and anxiety. In this lawsuit, Shah claims that Hy-Vee discriminated against him on the bases of his color, sex, national origin, and religion in violation of Title VII of the Civil Rights Act of 1964, and race in violation of 42 U.S.C. § 1981. He also alleges that he was denied accommodations and discriminated against in violation of the Americans with Disabilities Act ("ADA"). Several previous iterations of his complaint have been stricken or withdrawn, but Shah has now filed a Fourth Amended Complaint [92], and Hy-Vee moves to dismiss [93] it for failure to state a claim. As explained below, this motion is granted in part and denied in part.

**BACKGROUND**

The facts laid out below are taken from Shah's Fourth Amended Complaint, which the court accepts as true at the pleading stage.[1]

**I.    Factual Background**

Mr. Shah is a "46-year-old South Asian pharmacist." (Fourth Am. Compl. [92] ¶ 4.) During the events giving rise to this lawsuit, he was employed with Hy-Vee. Though his exact title and

---

[1] Because Mr. Shah is *pro se*, the court liberally construes his pleadings. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017).

responsibilities are not clear, earlier submissions suggest that Shah worked as a staff pharmacist at a Hy-Vee location in Sycamore, Illinois. (Third Am. Compl. [75-1] ¶¶ 2, 13.)

Shah alleges, first, that Hy-Vee discriminated against him by denying promotions to which he was entitled. Specifically, Shah claims that he applied for, but was rejected from, four separate "Pharmacist level positions" with Hy-Vee. He alleges that the positions instead went to white women with less experience. (Fourth Am. Compl. [92] ¶ 6.) He also claims that he was paid "18–30% less" than similarly situated white female coworkers, and was denied "an over $18k bonus for COVID kit sales," evidently also for discriminatory reasons. (*Id.* ¶ 7.)

The alleged discrimination also took the form of harassment and bullying at the hands of Shah's supervisors and coworkers. For example, on May 16, 2022, "Supervisor [Andrew] Murray publicly humiliated him," stating that he was "clearly not cut out for this anymore," saying "f****ing shortie, maybe it's time to move on," and observing "that the old guard can't keep up with innovation." (*Id.* ¶ 10.) He was also subjected to racial slurs and mockery—he states that supervisors told him to "[g]o back to your country," joked about "curry smell," and "questioned" his national origin. (*Id.* ¶ 11.) He notes that Murray called him "brownie" on at least one occasion. (*Id.*)

Mr. Shah also alleges that he suffers from disabilities and was denied appropriate accommodations. According to Shah, in April 2022 he was diagnosed with "severe knee, back issues limiting prolonged standing, as well as anxiety and ADHD, causing intermittent fatigue and motor skill challenges." (*Id.* ¶ 14.) On April 16, 2022, he requested accommodations for these conditions, including a stool, modified keyboard, and limited shifts, and provided medical documentation in support of the request, but at 12:20 p.m. on April 29, 2022, his request was denied (Shah does not say by whom). (*Id.* ¶¶ 15–16.)

Ten minutes later, at 12:30 p.m., Mr. Shah reported a safety violation to "Manager [Jeremy] Gipe" and unnamed other members of "management." (*Id.* ¶ 8.) The exact nature of this violation

2

is unclear, but Shah alleges that he was subjected to retaliation for reporting it.[2]  Specifically, he claims that his supervisors denied him religious breaks, rejected his vacation requests, used racist and "ableist" language, and gave him less favorable shifts.  (*Id.*)

On July 25, 2022, Mr. Shah was fired by "Manager Murray and HR [Mikela] Miller."  (*Id.* ¶ 17.)  Shah alleges that he was replaced with a "younger white female." (*Id.* ¶ 22.)  Later that day, "Robinson," who Mr. Shah identifies as a regional manager, informed Shah that he was fired because he was "not a good fit," but invited him to reapply again in the future.  (*Id.* ¶ 18.)  Shah did so on two occasions:  on September 4, 2022, and October 26, 2022.  (*Id.* ¶ 19.)  While he does not say so explicitly, it appears that both applications were rejected.  (*See id.* ¶ 20.)  On October 28, 2022, when Shah asked Gipe about "the hiring decision" (it is not clear which one), Gipe informed him that they were "looking for someone who can grow with the company for the long term."  (*Id.* ¶ 20.)

Soon after his termination, on August 9, 2022, Shah filed an EEOC charge, alleging discrimination due to his race, national origin, sex, religion, age, and disability.  He received a right-to-sue letter on August 2, 2023.  (*See* Opp'n [95] at 3–6.)

## II. Procedural Background

This lawsuit resulted.  Shah filed the initial version of his complaint in state court in DeKalb County, Illinois, on August 9, 2023.  Defendant was served on August 29, 2023, and removed the case to federal court on September 28, 2023.  (*See* Notice of Removal [1] at 1.)

---

[2]  The relevance of this allegation is not clear:  Mr. Shah does not bring a claim under a statute that prohibits employer retaliation against employees who report safety violations.  To the extent that he intends to bring a retaliation claim under the Occupational Safety and Health Act of 1970, that statute does not include a private cause of action.  *See Hoeft v. Dommisse*, 352 F. App'x 77, 80 (7th Cir. 2009) ("[O]nly the Secretary of Labor may sue to enforce the [OSH] Act, which does not provide individual employees with any express or implied right of action.").  And even if it did, Shah's allegations of retaliation lack any specifics about who it was that mistreated him or when—or even whether those individuals were aware of his having made this undescribed safety report.

Since then, Shah has filed a total of five complaints, the first four] of which [1, 47, 60, 77] were either dismissed by the court or stricken on Mr. Shah's own motion. In its order dismissing Plaintiff's Third Amended Complaint [77], the court noted that his pleading was far too long, and contained numerous factual allegations that were of no obvious relevance to his claims. The court directed him to submit a Fourth Amended Complaint that clearly sets forth his claims in "no more than 35 paragraphs" and "in no more than five double-spaced pages." (Order [84] at 1–2.) The court further ordered Shah to submit a copy of any EEOC charges that he filed in relation to the facts at issue in this case. (*Id.* at 2.)

On June 20, 2025, Mr. Shah filed a Fourth Amended Complaint. In it, he brings a total of six claims. Four are Title VII claims: color discrimination (Count I), national origin discrimination (Count III), religious discrimination (Count V), and sex discrimination (Count VI). (Fourth Am. Compl. [92] at 4–5.) He also brings a claim of wrongful termination under the ADA (Count II) and for race discrimination under 42 U.S.C. § 1981 (Count IV). This document adhered to the court's page limit, but Shah did not submit, as directed, a copy of his EEOC charge. Instead, he submitted a copy of his right-to-sue letter. (*See id.* at 12.) Hy-Vee then moved to dismiss [93], arguing that dismissal is warranted because Mr. Shah has failed to follow "this Court's repeated directives" or, alternatively, because the complaint does not state a claim for relief can be granted. (Mot. [93] at 1 ); *see* FED. R. CIV. P. 12(b)(6). Mr. Shah opposed [95] by submitting what appears to be the correct EEOC document and noting that Hy-Vee was "already in possession" of the demanded document even prior to the filing of the Opposition. (Opp'n [95] at 1–2.) Hy-Vee replied [97], and the motion is now fully briefed.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. FED. R. CIV. P. 12(b)(6); *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive, a complaint "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fosnight v. Jones*, 41

4

F.4th 916, 921–22 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage in the litigation, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).

As Shah is a *pro se* litigant, the court construes his complaint liberally. *Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2022). Nonetheless, even when prepared by nonlawyers, to survive a motion to dismiss, a complaint must go beyond mere labels and conclusions and "raise a right to relief above the speculative level." *Brockett v. Effingham County*, 116 F.4th 680, 685 (7th Cir. 2024) (quoting *Twombly*, 550 U.S. at 555). The court need not "imagine every possible argument" in Shah's favor simply because he is not represented by counsel. *Harris v. United States*, 13 F.4th 623, 629 (7th Cir. 2021).

## **DISCUSSION**

Mr. Shah's complaint alleges that he has been discriminated against on the bases of his color, race, national origin, religion, sex, and disability status. Defendant challenges these allegations in the Fourth Amended Complaint as "conclusory assertions and an attempt by Plaintiff to allege a formulaic recitation of the elements of certain of his claims." (Mot. [93] at 6.) The court agrees in part.[3]

---

[3] Defendant also argues that the court should dismiss this case because Shah "has elected to ignore this Court's repeated directives and referrals for assistance since filing the Complaint nearly two years ago." (Mot. [93] at 1.) Specifically, Defendant asserts that Shah's submission of his right-to-sue letter does not comply with the court's prior directive that he produce a copy of his EEOC charge. (*Id.* at 1–2.) The court does not believe that this omission alone warrants dismissal. Confusion about the nature of legal documents is understandable, and Shah did eventually attach the correct document to his brief in opposition to this motion. He has also provided the court with copies of emails suggesting that he worked diligently to obtain the document.

I.  **Title VII Discrimination**

To state a claim of discrimination under Title VII, Shah must allege that he was subjected to an "adverse employment action" because of his membership in a protected class. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). For purposes of Title VII, an adverse employment action is one that affects the "compensation, terms, conditions, or privileges of employment . . . such as hiring, firing, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Gibbs v. Gen. Motors Corp.*, 104 F. App'x. 580, 583 (7th Cir. 2004) (citing *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000)). To survive a motion to dismiss, Shah must only allege "sufficient factual matter" to support a plausible inference that his mistreatment was caused by his membership in a protected class. *See Iqbal*, 556 U.S. at 677.

In total, Mr. Shah's complaint purports to allege that he was discriminated against because of four characteristics protected by Title VII: color, national origin, religion, and sex.[4] (Fourth Am. Compl. [92] at 4–5.) His race, sex, and national origin discrimination claims clearly pass muster because he (allegedly) was paid "18–30% less than similarly qualified Caucasian female colleagues performing the same job." (Fourth Am. Compl. [92] ¶ 7.) Discrimination "with respect to compensation" is, of course, prohibited by Title VII. *Palmer v. Ind. Univ.*, 31 F.4th 583, 589 (7th Cir. 2022) (citing 42 U.S.C. § 2000e-2(a)(1)). Shah's allegation that he was paid differently than similarly situated white female coworkers, combined with the allegation that his supervisors

---

[4] Shah characterizes his Title VII claim as a "color" claim, but his underlying EEOC charge refers to a claim of *race*, not *color* discrimination. (*See* Opp'n [95] at 3 (claiming that he was "discriminated against because of [his] *race* . . . in violation of Title VII of the Civil Rights Act." (emphasis added).) This minor inconsistency is not fatal to the claim, however; Shah's reference to himself as a "non-white" "person of color," his comparison of his own treatment with that of his "Caucasian" coworkers, and his decision to also bring a claim under 42 U.S.C. § 1981 all suggest that he intends to remedy race-based discrimination through this lawsuit. The court sees no basis for a conclusion that Hy-Vee was misled or prejudiced by Shah's allegation, particularly because at least a portion of Shah's submission to EEOC did identify "color" as the basis for the alleged discrimination. (*See* Fourth Am. Compl. [92] at 8.)

subjected him to racial slurs and other forms of race-based harassment, is sufficient to state a plausible claim of race-based and sex-based discrimination.[5]  And, although he does not state explicitly that his national origin was a reason for the differential pay, it is a plausible inference, given that his supervisors allegedly made repeated derogatory remarks targeted at his South Asian ethnicity.  His case may proceed on those three bases.[6]

Shah's claims of religious discrimination, however, must be dismissed.  His complaint does not allege that he suffered any form of discrimination because of his religion, or even that his supervisors were aware of his faith at all.  The only mention of his religion in the complaint is a passing reference to "religious breaks."  Title VII certainly requires "employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship,'" *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)), but Mr. Shah does not allege that he ever requested such breaks, or that his employer was otherwise aware that he required accommodations for religious activity.  Because the factual matter in the complaint does not support a plausible inference of religious discrimination, the claim must be dismissed.

## II.     ADA Claims

Mr. Shah also brings a claim under the Americans with Disabilities Act of 1990 ("ADA"), which prohibits discrimination on the basis of disability.  42 U.S.C. § 12112.  The ADA forbids multiple forms of discrimination.  Relevant here, those include "not making reasonable accommodations" for a disabled employee, *id.* § 12112(b)(5)(A), and firing an employee for requesting an accommodation, *id.* § 12203(a).  Shah stylizes his ADA claim as one for wrongful

---

[5] In its Reply, Hy-Vee asks the court to dismiss Plaintiff's color-discrimination claim as duplicative of his § 1981 race-discrimination claim.  (Reply [97] at 2.)  The court need not address this argument, as the court dismisses the § 1981 claim on other grounds.

[6] Mr. Shah's complaint purports to bring a disparate impact claim under Title VII.  (*See* Fourth Am. Compl. [92] ¶ 29.)  But his complaint does not allege that any of Hy-Vee's actions have had a disparate impact.  To the extent he intends to bring one, his disparate impact claim is dismissed.

termination, but his allegations suggest he intended to bring a failure to accommodate claim, as well, and the court addresses both theories here.[7]

To state a claim of retaliation under the ADA, Shah must establish "(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007) (quoting *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006)). Shah clearly satisfies the first two prongs of this test by alleging that he requested accommodations and was fired. But he does not plausibly allege causation. He does not state any facts suggesting that his termination was retaliatory, and instead relies on temporal proximity between his accommodations request and the adverse action. But that link is a tenuous one, given that he made the request in April and was terminated more than three months later, in July. *See Vavra v. Honeywell Int'l, Inc.*, 106 F.4th 702 (7th Cir. 2024) ("[E]vidence of suspicious timing, alone, is 'generally insufficient to establish a retaliatory motivation.'" (quoting *Jokich v. Rush Univ. Med. Ctr.*, 4s2 F.4th 626, 634 (7th Cir. 2022)). Because he lacks allegations that support a inference of causation, he does not state a plausible retaliation claim.

Shah's failure-to-accommodate claim is more straightforward.[8] An employer violates the ADA if it fails to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To state a claim for failure to accommodate, a plaintiff must allege that "(1) he was a qualified individual with a disability, (2) the employer was aware of his disability, and (3) the employer failed to reasonably

---

[7] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citation omitted)).

[8] That Shah did not explicitly refer to his claim in these terms is not fatal; federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). Because plaintiffs must "plead claims rather than facts," a "complaint[] need not identify the applicable law." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

accommodate his disability." *See Williams v. Bd. of Educ.*, 982 F.3d 495, 503 (7th Cir. 2020) (cleaned up). The facts, taken in the light most favorable to Shah, show that he suffered from a disability; requested accommodations, with medical documentation supporting the requests; and that his requests were denied. (Fourth Am. Compl. ¶¶ 15–16.) And some of the allegedly-requested accommodations (like a stool and modified keyboard) appear to be minimally burdensome (if burdensome at all) to his employer. He may proceed on an ADA failure to accommodate claim.

### III. Section 1981

Shah also brings a race-discrimination claim under 42 U.S.C. § 1981. Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Campbell v. Forest Pres. Dist.*, 752 F.3d 665, 668 (7th Cir. 2014) (quoting *Runyon v. McCrary*, 427 U.S. 160, 168 (1976)). To state such a claim, Shah must allege facts that plausibly support an inference that he was mistreated because of his race. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020).

This claim must be dismissed. Unlike Title VII claims, which can be proved by showing that race was a "motivating factor" in discriminatory treatment, *Bostock v. Clayton Cnty.*, 590 U.S. 644, 657 (2020), Section 1981 requires a showing of but-for causation, *Comcast*, 589 U.S. at 333. In other words, a plaintiff must allege facts supporting an inference that his race was *"the determinative reason"* for his treatment, not simply one factor among others. *Arevalo-Carrasco v. Middleby Corp.*, 851 F. App'x 628, 630–31 (7th Cir. 2021) (emphasis added). Shah's complaint does the opposite: it consistently merges multiple reasons for discrimination, suggesting that his discrimination was due to some combination of race, sex, disability, retaliation, or other factors. And, because he consistently compares his treatment with that of his white *women* coworkers—and never to white men—it appears that he believes that his gender was a significant reason (if not the motivating factor) for his treatment. As many courts in this circuit have recognized, a plaintiff cannot survive a motion to dismiss upon an allegation "that racial discrimination was one

9

factor among many in a defendant's decision." *Piccioli v. Plumbers Welfare Fund Local 130*, No. 19 C 00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020) (Tharp, J.).[9] Shah may proceed on a race discrimination claim under Title VII, but his failure to state facts supporting a plausible inference that his race caused his discriminatory treatment, despite having had five opportunities to do so, warrants dismissal of the § 1981 claim (Count IV).

## IV. Age Discrimination in Employment Act

Read generously, as required for a *pro se* submission, Shah's complaint also appears to allege a violation of the Age Discrimination in Employment Act ("ADEA").[10] The ADEA "'protects workers 40 years of age and older from age-based employment discrimination.'" *Ontiveros v. Exxon Mobil Corp.*, 148 F.4th 521, 529 (7th Cir. 2025) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020)). Shah's allegation that he was terminated, and his supervisor's later remark that Hy-Vee was "looking for someone who can grow with the company for the long term," could support a claim that Hy-Vee's refusal to re-hire Shah was based on his age. (Fourth Am. Compl. [92] ¶ 20.) The complaint here alleges discrimination in Shah's termination, not in the failure to re-hire him. The court nevertheless believes the alleged remark might be understood as evidence of the motivation for termination as well, and declines to dismiss the age discrimination claim.

---

[9] *See also Hill v. Target Corp.*, No. 24 C 341, 2025 WL 919614, at *4 (N.D. Ill. Mar. 26, 2025) (Lefkow, J.); *Arora v. Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *3 (N.D. Ill. Oct. 13, 2022) (Ellis, J.); *Malhotra v. CVS Health Corp.*, No. 24 C 4769, 2025 WL 2453807, at *3 (N.D. Ill. Aug. 4, 2025) (Hunt, J.); *Equal Emp. Opportunity Comm'n v. Sis-Bro Inc.*, No. 24-CV-968-JPG, 2025 WL 213992, at *3 (S.D. Ill. Jan. 16, 2025) (Gilbert, J.).

[10] While Shah does not include an ADEA claim in the "Causes of Action" section of his complaint, he states elsewhere that he suffered "discrimination" under the "ADEA, 29 U.S.C. § 626(c)." (Fourth Am. Compl. [92] ¶ 1.)

## **CONCLUSION**

Defendant's motion to dismiss [93] is granted in part in part and denied in part. Plaintiff may proceed on only (1) his Title VII race, national origin, and sex discrimination claims, (2) his ADA failure to accommodate claim, and (3) his ADEA claim. As Shah has had ample opportunities to present other claims effectively, all other claims are dismissed with prejudice.

ENTER:

Dated: January 28, 2026

_____
REBECCA R. PALLMEYER
United States District Judge